UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
APR 0 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-244-GWU

MORRIS MEREDITH,                                           PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Meredith

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Meredith

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Meredith

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Meredith

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Meredith

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Morris Meredith, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an adjustment disorder with mixed anxiety and depression. (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Meredith retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 26-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to only simple, repetitive instructions and tasks in an object-focused, non-public work setting. (Tr. 360-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 361-2).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

7

Meredith

The ALJ found that there were no exertional or non-exertional physical restrictions, a conclusion not fully supported by medical records as far as the plaintiff's allegations of arm pain are concerned.  Therefore, a remand will be required for further consideration

The plaintiff testified that, in addition to back pain, he had right arm pain and numbness, and had undergone two operations on the nerves of this arm. (Tr 340, 347-8). The first operation was by his family physician, Dr, Talmadge Hays, and the second was by a hand specialist, Dr. Joseph Kutz. Records from Dr. Kutz show that he performed an operation in June, 1990, well before the plaintiff's alleged onset date of October 31, 2001 (Tr. 68) for what he diagnosed as radial nerve compression secondary to scarring, and "aberrant abductor pollicis longus insertion." (Tr. 119). This was following a previous surgery which had failed to release deQuervain's syndrome of the right wrist completely.  Dr. Kutz released his patient to return to work on July 23, 1990, and no permanent restrictions were indicated.  (Tr. 125).

However, after a hospital admission in March and April, 2000[1] the plaintiff was examined by a neurosurgeon, Dr. James Gilbert. His examination on July 1, 2003

---

[1] This hospitalization produced diagnoses of acute lumbar strain and "lumbar annular injury." (Tr. 140).  According to the plaintiff's family physician, Dr.Talmadge Hays, a consulting neurosurgeon, Dr. Bean, had indicated that a CT scan of the lumbar spine showed no apparent significant disc herniation between L3 and S1, and a lumbar spine x-ray showed only minimal degenerative changes at L5-S1, and did not recommend further testing but rather aggressive physical therapy and rest. (Tr. 140, 157-8,165-6).

8

showed tenderness of the neck as well as pain in both arms with a positive Spurling's test. (Tr. 181). He noted that the plaintiff had previous operations on his right arm for recurrent deQuervain's syndrome. (E.g., Tr. 119). There was no tenderness of the lumbar spine and a normal range of motion of the neck and lumbar spine. (Tr. 181). Dr. Gilbert recommended obtaining MRI scans of the cervical and lumbosacral spines and recommended adding an antidepressant to his medications, which already included OxyContin and Xanax from Dr. Hays. (Tr. 181-2). Apparently, these tests were not obtained, and there were no further visits to Dr. Gilbert.

At a consultative physical examination by Dr. Albert Smolyar on May 28, 2003 the plaintiff gave a history of difficulty with fine motor movements of his right hand, but indicated that there had been significant improvement following surgery by Dr. Kutz. (Tr. 183). In addition, Mr. Meredith complained of significant low back pain with any activity. (Tr. 184). Dr. Smolyar's examination included lumbosacral spine x-rays which were unremarkable other than minimal osteophyte formation at L4-5, and an unremarkable x-ray of the right wrist. (Tr. 186). He found that the patient had a normal gait and station, could walk on his heels and toes, and perform a knee squat, albeit with some difficulty. (Tr. 185). He was able to bend forward 90 degrees at the waist had normal strength, reflexes, and no focal neurological deficits. (Id.). However, certain other tests, such as the axial load test and moving the plaintiff's left great toe up and down, also produced complaints of back pain, and Dr. Smolyar

Meredith

suggested that these were indicative of symptom magnification. (Id.). There was a scar over the right wrist on the right forearm from previous surgery, but Dr. Smolyar felt that fine motor movements and strength were intact, although there was some discomfort with movement of the neck. (Id.). He did not list functional restrictions.

The plaintiff's treating family physician, Dr. Hays, submitted office notes even before the plaintiff stopped work indicating a diagnosis of chronic hand pain with neuropathy (Tr. 243), and prescribed medications such as Xanax, Lorcet Plus, and OxyContin (e.g. 231, 240). The medications were not entirely effective in controlling Mr. Meredith's pain, however, and Dr. Hays on several occasions noted decreased strength, range of motion, and sensation in the right wrist. (Tr. 228-34). In April, 2001 he was recommending an evaluation of loss of sensation in the digits of Mr. Meredith's right hand, noting that he wanted to keep the plaintiff's ability to work intact. (Tr. 236). In July, 2001, however, it was noted that Mr. Meredith was "counseled on [discontinuing] repetitive use of [right] hand." (Tr. 234). Dr. Hays indicated that the plaintiff had chronic hand, back, and neck pain but apparently did not do any additional objective testing. Dr. Hays stated that the plaintiff was "rather substantially disabled" in May, 2003, apparently as a result of deQuervain's syndrome involving both the left and right wrists, and "multifocal and multilevel arthritis involving the thoracic and lumbar vertebral column." (Tr. 206). He stated the next month that the plaintiff's persistent pain and dysfunction in the right wrist meant that "most of the time this man is not able to perform meaningful work

10

Meredith

activity." (Tr. 204). In July, he referred to "extensive scarification and persistent limitation of flexion/extension of the wrist." (Tr. 203). In August, Dr. Hays wrote that "we have had consultation with pain management people and apparently the entire group of people who have been enlisted to review his situation seem convinced he has pathology of a significant note and are willing to testify to that effect . . . ." (Tr. 199).

Although conclusory opinions of disability, even from a treating source, are not entitled to complete deference, the only medical source that directly contradicts the opinion of the treating source that the plaintiff should not repetitively use his right hand is a state agency reviewer, Dr. Gary Higgason, who completed his brief report on June 14, 2003 and did not discuss Dr. Hays' notes or Dr. Gilbert's findings. He based his opinion that Mr. Meredith's physical complaints were "less than severe" primarily on Dr. Smolyar's report. (Tr. 260). While the opinion of a non-examiner may be accepted over that of an examiner, the non-examiner must have had access to the entire record and clearly stated his reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The failure to do so in this case renders the decision not supported by substantial evidence.

In addition, on remand, the ALJ should reconsider the mental functional limitations. While he utilized the opinion of a state agency reviewer, Dr. Stephen Scher, to reject the functional restrictions of Dr. Blaine Pinaire, the only psychological examiner, a limitation found by Dr. Scher, a moderately limited ability to get along

11

Meredith

with co-workers or peers without distracting them or exhibiting behavioral extremes, was not included in the hypothetical question. (Tr. 293-5).

The decision will be remanded for further consideration.

This the ___5___ day of April, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

12